Thank you, Your Honor. Ms. Bonamici, you'll stay on, right? Correct. Yes, Judge. All right. Ms. Dolgo-Sheava, can you hear me? Yes, Your Honor. Good morning. Good morning. The court is calling case 19-2092, United States v. Uriarte. You have with you counsel Judge Kenneth Ripple by video and audio, Judge Amy Barrett by audio, and I'm Judge Mike Brennan. And Ms. Dolgo-Sheava, we're going to recognize Ms. Bonamici first because this is a case in which the United Your Honor, the district court erred in reaching the conclusion that section 403 of the First Step Act applied to Mr. Hector Uriarte at the time of his resentencing. The defendant incurred statutory penalties at the time that he committed his statutory penalties that were in effect at the time of his crime when he committed the crime, and no subsequent statute here for a section 403 reducing those penalties could apply to him unless the statute said that it did. And that's not what the statute said here. Section 403 expressly provides that the modified penalties for section 924 C offenses that are provided by section 403 apply only if a sentence for the offense has not been imposed as of such date of enactment. That is the date of the First Step Act in December of 2018. Thus, the statute created a narrow departure from the general presumption that a statute when it's enacted or that is a repeal of a statute or the reduction of penalties does not apply to previous cases. But to read the language, obviously, and I agree with you that the plain language favors your version in which as an indefinite article would mean more like any sentence has been imposed. And there's appeal to that, you know, it draws a bright line. We can identify the time when the first sentence was imposed even if it was later vacated. The flip side is, you know, when Mr. Uriarte is before the district court on remand, we would say he has not been sentenced yet or he's not under sentence. I mean, this kind of goes back to some of Judge Brennan's questions in the prior argument. I mean, how do we think about the legality of a sentence regardless of how we might use that term in ordinary usage? I mean, legally, he has not been sentenced. And in some of the cases, including Pearson, it's not really clear if they're talking about the plain language or the fact of finality. Well, both of those things point in the direction of the government's argument because, and I'll tell you why, yes, the indefinite article does suggest any. In addition, the language, the operative language here looks backward rather than forward. It asks whether a sentence, if the sentence has not been imposed as of such date. So, it is not looking forward to something that may be occurring in the future. It's looking at the date of the enactment of the statute and asking us to determine whether a sentence for the offense has been imposed. And here, of course, the case is yes, that's true. And so, with respect to the language there, I think it clearly does. A third reason, based on the language, is that there is language that Congress uses when it wants to talk about finality issues. And that type of language was not used here. So, in other words, the court could have said if, you know, sentences that have been come final did not do that here. So, the language of the statute, I think, contains or looking at it both in terms of finality and in terms of just the indefinite article that's used, as well as just the directional purpose of the language. I think all of those things point to this question, or point to this answer, that they were looking at Congress, or at least the language, reflects the intent that any time any defendant who has previously been sentenced for the offense before the court has, oh no, here's something bad. I'm very sorry, but I just got a message saying that my battery is running low, so I started to worry. So, anyway, so I would say that finality is actually observed by its absence here, or absence of any language dealing with that question. I'm sorry, Judge Ripple? Please, in this enactment, Congress was an attempt, was attempting to do what? It was attempting to take this particular situation out from under the usual rule, wasn't it? Yes, but in a limited fashion. I mean, they certainly... That was my next question. Why did they do that? What were they trying to accomplish? Why did they take this out from under the usual rule? Well, I think that they were trying to accomplish that anyone who was, anyone who committed an offense under the statute would get the benefit of it as long as they were being sentenced after the enactment. So, in my judgment, that is the purpose, to make clear that the fact that the sentence was, or that the crime was committed previously, would not impact adversely the application of the statute. Well, in other words, isn't it, wouldn't it be very simple just to read this to say, well, if a person, a day of enactment, if a person hasn't, if sentence isn't, hasn't been passed yet on the man, given the benefit of the act, we're not going to go back and look at all of those sentenced prisoners that are subject to this situation, but this still has to be imposed. And in that case, wouldn't this be one of those cases? I mean, this is remedial legislation. They were trying to correct this. Why wouldn't they want to give this man the benefit of it? Well, I, here's what, one answer to that is, in other provisions of the same statute, that Congress decided to apply it retroactively, even to people whose sentences were final, and all the way back. So, there are provisions of the same legislation that, that are applied retroactively. Congress decided not to do that here. And the way that they phrase, and they could have easily said any sentence that's not final. If there are, there are, you know, zillions of, maybe not zillions, but there's a lot of statutes that speak that way, and they easily could have done that, but they did not. So, did they have to? Pardon me? Well, did they have to? Didn't this make a point? Very, very well for the particular situation that they confronted with here. Well, I think that, I think what they were attempting to do was to make it applicable to people who committed their crimes before the enactment, and who were sentenced, actually sentenced afterwards. And they did carve out, by saying someone who hasn't previously been sentenced, they did carve out people who had been previously sentenced. And that includes the defendant here. And they used the term where sentence has been imposed, rather than where sentences become final. And that's a decision, and we can't ignore that decision. And we could, we could decide, I mean, it could be the case that, that there, that it was, you know, not well thought out, or they later could decide that that's not what they wanted, or, I mean, all that can happen. But we're bound by the intent that's expressed by the words that are used. And their, their use of the word imposed, with all that that means, combined with their use of the, their failure to use the kind of language that's, that's most frequently used, when the intent is to incorporate and bring in defendants whose appropriate deduction from that is that they meant what they said, and not something else. And, and I think that's, I really think that's the right way to read the statute. I think that's what was decided in Pearson as well. Regardless of any appeals, regardless of what happens afterwards, we look at whether a sentence was imposed on the date of, it had been imposed on the date of enactment. And if that's true, then the defendant is excluded. And it was on the date of enactment is null and void. Well, I don't, I don't actually think that null and void is the right is the right way of looking at it, in the sense that it is no longer applicable. But for example, a defendant, this defendant and other defendants who are sent back on don't get popped out of jail while they wait. They're serving some sentence. I mean, it is not that it has no legal effect whatsoever. It has an effect, they're still in jail, they're serving the sentence, and it's going to be it's potentially going to be modified within the discretion of the district court at resentencing, subject to any limitations put on the district court through the remand. But that does not mean that it is is null and void, like it never happened, it has no impact whatsoever in the defense entitled to immediate release. So I don't I don't think that's a way the proper way to look at it. In the defendant is here is looking at a situation where I mean, this is the perfect example of why it makes no sense to to make application based on the length of time that someone has managed to that that an appeal is remained pending or whatever. Here's three defendants in this case, one of whom is out of luck because his he got resentenced before this happened and it and it's just it's even even even the understanding that the defendant is putting forward would not help somebody who was resentenced before the enactment of the act. And then a second defendant who's resentenced after the act, or resentenced after the act, previously sentenced, is now going to be treated potentially differently. The judge in this case held that he should be treated differently. Right? And and the only... You just told us in the earlier case that they're going to be lines drawn. You just told us in the earlier case that they're going to be lines drawn. Some people will benefit, some won't. That's the that's what happens when Congress draws a line. Well that's true. And Congress could have drawn the line at finality and instead drew the line at imposition. And that was Congress's choice. And they made it. And it's up to us now to abide by it. That's that's our view of the plain language of the statute. And we don't we don't think that any of the other arguments that can be made about looking at policy, looking at you know sympathetic situations you know with different defendants. I mean it's true it is always unfortunate when when when something when a new legislation comes through and people who have gone through the system before don't get to take advantage of it. It always seems unfair. But that's not that is not a statute enacted by Congress. So I don't my my screen is not showing time, but I think I should reserve the rest of my time for rebuttal. If I haven't already done. You're a couple minutes over, but we will give you a brief chance for rebuttal. Thank you. To the defense, Ms. Dobasheva. Thank you, honors. We're asking that the district court judgment be affirmed. May please support. My name is Yelena Dobasheva, and I represent FLE Hector Uriarte. The defendant's view is that the plain language and the straightforward reading of 403 B is in defendant's favor. It provides that if any sentence has not been imposed as of the date of enactment, which was December 21st, 2018, then the lower mandatory minimums apply. And in this case, when Mr. Uriarte was re-sentenced, he had no sentence imposed on him. As the score stated in U.S. v. Mobley, 833 F3D 797, the posture of the case on the full remand is just as if the sentence has not been imposed. For nonce, I apologize. So when he was waiting, when his sentence was vacated for plenary re-sentencing, and when he was waiting to be re-sentenced, the new law came out, which became applicable to him at sentencing, and the district court properly applied it. The government focus has focused on the fact that the Congress did not say any sentence that is not final, but the Congress also did not say that it only applies to initial sentence, which is split up, or original sentence, if it wanted the new penalties, lower penalties to apply to original sentence only. And looking at the choice of words, if we substitute a for any one sentence, then any one sentence that has not been imposed, if the Congress would have said that any one sentence has been imposed, then maybe I would have agreed with the Congress. So any A, which means any one sentence, has not been imposed, and there has not been imposed a specific sentence, a sentence that he later received at re-sentencing. Also looking at the broader context of the statute, the Congress entitled the statute Clarification of 924 C, which the Congress is basically saying that 924 C was always intended to be a recidivist statute. It was never intended to apply to the cases like the one before this court, where two 924 C's were charged in the same indictment. We're also to assume that the Congress is aware of the basic sentencing principles when it legislates new law, which is that the law in effect, be it sentencing or re-sentencing, applies to defendant. And there's no reason to believe that Congress would want the district court, at plenary re-sentencing, to impose mandatory minimum sentences that we are now aware was based on mistaking interpretation of the law that the Congress has now repealed, and that the Congress clearly says is excessively punitive. And at plenary re-sentencing, the district court sentences on the clean slate. It sentences as if the prior sentence has never happened. So there's no reason for this excessively punitive law that the Congress says should have never been misinterpreted in the first place to apply at plenary re-sentencing. Well, counsel, couldn't it be a reason to avoid exactly what would happen in this case if we adopted your view that co-defendants like Mr. Sparkman and Mr. Uriarte would wind up with one getting the benefit and the other not, simply because of the vagaries of delay, or the court schedule, or Mr. Uriarte seeking a number of continuances? I mean, there's an unfairness in that, isn't there? There is unfairness, which will always exist when there's a new law comes out that changes penalties. And we should look at the type of unfairness that the Congress tries to prevent. And the type of unfairness that Congress tries to prevent is not the one that happens by ordinary operation of a felon's sentencing review, but the one that happens based on arbitrary or random sentencing. So the goal is to avoid different and what's considered unfair sentences for two defendants, for example, one being sentenced and one being re-sentenced roughly contemporarily. So if you have two people being sentenced, one person being sentenced and one person being sentenced, let's say on the same day before the same judge, it's fair that they would get the same sentence, or at least it's fair that the judge would have a discretion to give them the same sentence, versus where one person is sentenced six months before a different person, then by ordinary operation of the law, they might get different sentences. Then fairness comes and is considered when they're sentenced roughly at the same time. Additionally, after Dorsey, which did not have any retroactive provision, this court issued two unpublished decision where it says that fair sentencing applies at re-sentencing, and that was based on a similar penalty law statute that did not have any retroactive provision. And in this case, the First Step Act, the Congress specifically made the statute retroactive, not fully retroactive, but certainly retroactive that it would apply at plenary re-sentencing. And it would lead to very odd results if we have a fair retroactivity provision applying at re-sentencing, and we would have a First Step Act where we have a retroactive provision not to apply at re-sentencing. And finally, if there's still doubt how the statute should be applied, under rule of lenity, it should be applied in favor of the defendant. So if there's any ambiguity concerning how 403B should be interpreted, whether it should be interpreted in favor of the government or in favor of the defendant, under rule of lenity, it should be applied in favor of the defendant. Thank you, Ms. Dolgacheva. Ms. Bonamici, let's recognize you for about a one-minute rebuttal. Thank you, Your Honor. First of all, to look at the language, going back to the statute, the statute requires that the court consider the circumstances on the date of the enactment of the statute. That's the way it reads. On the day of the enactment of the statute, had the defendant been sentenced, had he not been sentenced? That's the line drawn by Congress. The line excludes the defendant here. Second, with respect to Congress being aware of general that the word imposed is used, and they understood when they used that word what it meant as a matter of law. As far as Dorsey goes, the distinction between Dorsey in this case here is very important, and that is that there was no provision made in the statute at issue in Dorsey in the Fair Sentencing Act, whereas here there is a provision made by Congress, and that limits this court's discretion because the court needs to apply the provision using its plain language. As far as the finality question that we've been talking about, I mean, what does this do to finality in the positive and the negative? When a court imposes a sentence, it is final in the sense that it is final and operational at that moment. Here, there's no provision in the statute that clearly points to the application on resentencing. There's really no provision in the statute, and the language of the statute clearly point in the other direction, and we would ask the court to reverse the district court's determination in this case. Thank you, Ms. Bonamici. Judge Ripple, did you have further questions for the advocates? Judge Ripple, did you have any further questions? No, thank you. I'm fine. Thank you. Judge Barrett? No, I did not. Thank you, Ms. Bonamici. Thank you, Ms. Reviseman. Thank you, Your Honor.